**Exhibit A**

**Timeline of Key Events and Disclosures**

Chronological summary of incidents, discovery failures, and suppression timelines based on
factual allegations in the complaint.

**January 1, 2023 – 2:27 a.m.**

**Video created: "Hit me with a car 2:27am.MOV"**

- Created on the complainant's iPhone prior to any law enforcement contact
- Not viewed or relied on by responding deputies
- Later uploaded to SAO system and used as leverage against the Plaintiff during plea
  negotiations

**January 1, 2023 – 2:55 a.m.**

**Videos created: "Hit me 2:55am.MOV" and "Hit me and harassed me 2:55am.MOV"**

- Recorded approximately **five minutes before** Deputy Lamoureux arrived on scene
- Filmed during a period when no physical violence had occurred
- These pre-incident videos were later cited by the SAO to threaten escalation, despite not
  being contemporaneously reviewed by deputies at the scene

**January 1, 2023 – 2:45 a.m.**

**First 911 call placed by the complainant**

- Officers respond to the residence
- The complainant states: "Nothing got physical"
- She shows a portion of a video and states: "We're about to divorce, I want a restraining
  order"
- Deputy Lamoureux replies: "I can't do anything unless something got physical. You'd
  have to file for an injunction through the courts"

- Lamoureux warns: "If I have to come back out here, someone's going to jail. I can't guarantee who"

**January 1, 2023 – 3:00:39 a.m.**

**Video created: "3am_1_1_23.MOV"**

- Filmed on the complainant's iPhone 13 Pro
- Forensic metadata confirms the timestamp, GPS location, and device origin (iOS 16.1.1)
- Created **seventeen (17) seconds before** Deputy Lamoureux arrived on scene at 3:00:56 a.m.
- Law enforcement classified the encounter as verbal, with **no crime committed**
- **First-call body-worn camera (BWC) footage recorded by Deputy Lamoureux**
- Title: *"DOMESTIC – NON VIOLENT, NO FURTHER ACTION REQ'D"*
- Audit logs confirm:
  - Uploaded at 8:48 a.m. on January 1, 2023
  - Added to SAO case file **January 6, 2023**
  - File ID: **HS20230000442**
- Despite confirming **no violence and no further action required,** this BWC footage was **never disclosed** during discovery

**January 1, 2023 – 3:52 a.m.**

**Second 911 call placed by the complainant**

- Now alleges Plaintiff "pushed her" after she attempted to retrieve keys from his waistband
- During the second 911 response, the complainant tells deputies that she tried to take keys from the Plaintiff's waistband and that he pushed her in response.
- A Salman verbally confirms the sequence back to her:
  > "So you wanted to leave… and he took the key and put it in his underwear… and you tried to take it… and that's when he pushed you?"
  She responds: "Yes."
- Deputy Lamoureux later asks: "Was he trying to get away from you?"
  The complainant answers: "Yeah. I think to like get away."
- This confirms that the complainant initiated the physical contact and that Plaintiff's actions were defensive and non-aggressive.

- Despite this, officers mute their microphones, confer, and proceed with arrest — a decision that contradicts both BWC-documented facts and the arresting officer's own verbal summary.
- On BWC, she states: "I think he was trying to get away from me"
- Deputies Ghabbour, Lamoureux, and Service mute their microphones to discuss probable cause
- Ghabbour (unmuted): "I don't see charging him with touching her at all — what's going on?"
- Lamoureux replies: "I told him if I had to come back, he was gonna go to jail"
- Officer Reed Service manufactures probable cause through taking statement under oath asking complainant "Did he push you?" She responds "Yes" then he follows up with "And you didn't want to be pushed?" She responds "Yes".
- Plaintiff is arrested


**January 1, 2023 – 3:53 a.m.**

**Incident officially logged by HCSO as occurred and reported at 3:53 a.m.**

- Arrest affidavit omits context from first call and complainant's admission of forcefully pulling plaintiff's underwear while attemping to take the keys from his person
- BWC footage retained internally but not disclosed to defense
- **Second-call BWC footage recorded by Deputies Lamoureux**
- Title:
  - *"DOMESTIC – JUST OCCURRED, ARREST" (Lamoureux)*
- Uploaded to Axon system **before 9:10 a.m. on Jan 1**
- Audit trail confirms:  • File was added to **case 23-CM-000014** on **January 6, 2023**  • SAO had full access as of that date
  - Despite this, **only a corrupted version** was provided to the defense during discovery


**January 2, 2023**

**Arrest report approved**

- No exculpatory BWC footage included in the report

• Tatiana Huntley files sworn Petition for Injunction for Protection Against Domestic Violence, alleging Plaintiff aggressively pulled her toward him during the January 1, 2023 incident.

• This narrative materially conflicts with Plaintiff's subsequent 911 call and body-worn camera (BWC) footage, wherein the complainant admits Plaintiff was attempting to separate himself and leave.

• Despite these contradictions, State Attorney's Office relied on the sworn affidavit as part of the probable cause basis for prosecution and injunctive relief.

February 21, 2023

**SAO uploads the following videos to its internal system:**

- "Hit me with a car 2:27am.MOV"
- "Hit me 2:55am.MOV"
- "Hit me and harassed me 2:55am.MOV"
- All three were recorded **before the first 911 call response** and were **never shown to or relied upon by responding deputies**

**March 6–7, 2023**

**SAO prosecutors access and stream the IPhone videos**, confirmed by audit logs

- Prosecutor Alexander Wilde is among those who viewed the files

**April 18, 2023**

**Civil standby incident involving one of the same deputies**

- No BWC footage preserved or shared in discovery
- HCSO later claims deletion was per standard retention policy
- No metadata or deletion logs provided upon request (after case is closed)

**March 5, 2024**

**SAO** says Tatiana is not in agreement with DVIP so the offer stands as WH 12 months
domoestic violence probation.

**March 7, 2024**

**The complainant gives sworn deposition testimony in the family law case**

- Admits reaching into Plaintiff's waistband to retrieve keys
- Describes falling or "jumping" into or near the crib during the interaction
- States: *"You already put hands on me... That's over,"* before calling police

**Same day:**

- **SAO issues discovery disclosure stating: "No exculpatory evidence exists."**
- This contradicts audit logs and the SAO's known access to:
- BWC footage admissions
- Pre-incident video files
- 911 call

**March 2024 – Plea Coercion Timeline**

- SAO reviews complainants' deposition
- Plaintiff rejects initial plea offer
- SAO proposes:
    - 6-month DVIP with batterers' intervention classes and a substance abuse evaluation
- Plaintiff rejects again
    - Finally, SAO offer reduce charge to disorderly conduct + MIP and drop charges after
  completion of MIP
- SAO threatens to **add new charges** using the pre-incident videos if Plaintiff rejects
- Plaintiff accepts the MIP resolution under duress

**April 12, 2024**

**CAD Report: Domestic – Non-Violent (Durig, Michael R.)**

- Denis Smoliakov contacted HCSO stating he was afraid after the suspect (Tatiana) broke down a door during a verbal dispute.
- The complainant reported that **Tatiana had left the scene** but had threatened to falsely accuse him of "38'ing her".
- He explicitly told responding Deputy **Michael Durig** that **no physical contact occurred**, and that he was afraid of **retaliatory false allegations**.
- Tatiana was **gone on arrival (GOA)** and no injuries were reported.
- **Deputy Durig cleared the scene without arrest**, marking the call as **"Domestic – Non-Violent"**, and provided advice about injunctions and evictions.
- Final clearance: **"No further action required"**, and no report was filed.
- Remarks: *"Spoke with him about evictions and injunctions... No further... Was scared of her threatening to tell police he 38'd her. Advised it was not physical."*

**June 26, 2024**

Pretrial notice to close criminal case after completion of MIP.  Shortly after, this case disappears from court website – without expungement or any action from plaintiff

**July 2024**

**Plaintiff obtains redacted BWC footage via public records**

- Confirms the complainant stated Plaintiff was trying to leave and that she initiated contact
- Confirms Ghabbour disagreed with probable cause
- First-call BWC still not disclosed
- Notably BWC footage of Lamouruex telling Salman she needs to fill him in is muted at the exact point when Salman says "I'm just gonna take him to jail" to redact out "take him to jail".

**October 24, 2024**

- Denis Smoliakov testifies in Huntley v Huntley divorce and references a forged lease document by Tatiana Huntley
- Tatiana admits to a prior incident where she dumped coals on Plaintiff burning him to "scare him"
- Judge says she must take the DVI into account in her ruling and awards Tatiana with more parenting time

**February 27, 2025**

• Plaintiff files formal complaint with the Florida Department of Law Enforcement (FDLE) regarding officer misconduct.
• FDLE declines to investigate and refers the matter back to Hillsborough County Sheriff's Office Internal Affairs (HCSO IA), stating the agency is responsible for investigating itself.
• HCSO supervisor Tindall responds to Plaintiff's complaint but declines to personally investigate, referring the matter to Field Training Corporal Robert Figueroa.
• Plaintiff files a formal misconduct report with Corporal Figueroa, challenging discrepancies between arrest affidavits, body-worn camera (BWC) footage, and discovery materials.

**March 1, 2025**

**Post-plea narrative revision by HCSO Internal Affairs**

- HCSO Field Training Corporal Robert Figueroa issues a written justification email following Plaintiff's misconduct complaint.
- In this email, Figueroa **reframes the primary aggressive act** as Plaintiff "taking the keys" and claims the "first alleged incident of battery" was Plaintiff pushing the complainant — **even if it was done to create distance.**

- Figueroa acknowledges that the Plaintiff stated, "may have fallen intentionally into the crib" and that the Plaintiff denied any physical contact, but asserts deputies acted within the law based on F.S.S. 784.03(1).
- This justification contradicts:
  • The arrest affidavit (which did **not** cite the keys)
  • The body-worn camera footage (where complainant stated, "I think he was trying to get away from me")
  • Prior reports that omitted any mention of keys as the basis for arrest
- Figueroa confirms that his findings and supporting documentation would take up to 60 days to become public record pending chain-of-command approval.

**March 7-25, 2025**

• Plaintiff submits formal public records requests to SAO, requesting:
  – Internal communications between SAO personnel and defense counsel;
  – Body-Worn Camera (BWC) videos (first and second calls);
  – Metadata and audit logs for BWC files and internal emails;
  – Internal case notes and charging memoranda.
• Plaintiff repeatedly follows up with HCSO Professional Standards Bureau (PSB) regarding misconduct complaint and internal investigation.
• Plaintiff formally raises concerns about District 5 conflict of interest, lack of impartial oversight, and suppression of exculpatory evidence.
• Plaintiff requests escalation to independent or higher-level review outside District 5.
• HCSO PSB (via Corporal Tindall and staff) refuses to escalate review, affirming that complaints are handled internally by involved deputy's supervisors.
• Supervisory personnel ratify existing IA findings without addressing Plaintiff's documented contradictions or Brady concerns.

**March 18 - April 5, 2025**

• Plaintiff refines and formalizes public records requests, clarifying exact scope and specifying metadata requirements.
• Plaintiff highlights discovery gaps and evidence suppression concerns in follow-up communications.
• SAO acknowledges receipt but delays full confirmation and cost estimation.

**SAO issues partial invoice in response to public records request**

- Admits existence of metadata, internal emails, and withheld records
- Contradicts prior discovery claim that "no exculpatory evidence exists"

**April 5, 2025 – SAO Records Clarification**

• Plaintiff issues formal clarification letter confirming scope of public records request, preservation of evidence demands, and requesting expedited processing.

**April 18, 2025 – Litigation Hold Notice**

**Plaintiff sends Litigation Hold Notice to SAO and HCSO**

- Demands preservation of:
  - • BWC audit logs
  - • Internal emails
  - • Plea discussions
  - • Discovery records
  - • SOPs related to arrest and evidence retention

**April 18, 2025 (Shortly after on the same day)**

• SAO (via Ada Carmona) acknowledges responsive materials exist, including:
  – Internal email metadata;
  – Body-Worn Camera (BWC) access logs;
  – Case notes and memoranda related to Plaintiff's prosecution;
  – Archived communications with Plaintiff's prior defense counsel.
• SAO confirms possession but delays production pending redactions and payment.
• SAO redirects chain-of-custody responsibility for full metadata to HCSO.

**April 21, 2025 – SAO Records Payment**

- Plantiff goes in person to pay for records and talks to Beth Jenkins who is CC'd on email chain
- On arrival is told they "Don't take cash", plaintiff mentions Ada Carmona told him they do in the previous email
- Then told, you need exact change.  Plaintiff responds with "The invoice I was sent wasn't filled out and there was no total amount".  Beth informed him that "That means they are still working on it".  Plaintiff says he will have to come back another time then, thanks her and leaves.

**April 22, 2025 – SAO Records**

- Ada Carmona sends complete invoice.

**April 24, 2025 – SAO Records Payment Finalized**

- Plaintiff returns to SAO in person and pays records custodian Delores Rivera and is advised that he is now in the queue

**May 8, 2025 – Initial Denial of Audit Logs (HCSO)**

Plaintiff submitted a prior public records request for complete audit logs and metadata related to body-worn camera (BWC) footage from his January 1, 2023 arrest. HCSO Records Unit initially responded "Please see the following response from Senior Supervisor Sylvette Rodriguez Acevedo with the Body Worn Camera Unit - "All audit trail records for the requested cases have been provided to the requestor. After careful evaluation of the request with Axon representative and legal, we have no additional responsive records for the request.""

**May 14, 2025 - SAO Records Request**

- Plaintiff follows up on SAO records and is told they are working on it and will produce shortly.

**May 16, 2025 – SAO Partial Records Released**

- Partial records are released.
- Two BWC files released, notably the portion with Lamoureux telling Salman she needs to fill him in and Salman responding with "I'm just going to take him to jail" is not redacted showing the prior version obtained from HCSO was deliberately concealed.
- The State Attorney's Office produced two separate audit logs for Evidence ID HS2023000057: one labeled as "pre-redaction" and one labeled as "post-redaction." The "post-redaction" audit trail began on May 5, 2025, omitting all prior access, redaction, and download events. In contrast, the "pre-redaction" log confirms that defense counsel attempted to download the corrupted video file eight times in August 2023 and that the only instance of prosecutorial access occurred in March 2025. The omission of all prior activity from the May audit log supports Plaintiff's contention that materially exculpatory evidence was withheld and that the issuance of the altered audit trail was a deliberate effort to obscure prior access history and download failures

**May 23, 2025 – Complaint Filed at ~10:00 AM / Reversal at 3:30 PM**

- On the morning of May 23, 2025, Plaintiff filed his federal civil rights complaint. That same afternoon at approximately 3:30 PM, HCSO reversed its previous denials and admitted the following:
  *"Upon receipt of your previous email and review of the records already provided, it was discovered the incorrect BWC audit log was provided to you, for Case number 2023-557... We greatly apologize for the error."*
  HCSO produced new audit logs that had been withheld for weeks. The timing — just hours after the lawsuit was filed — strongly supports Plaintiff's contention that critical records were not disclosed until compelled by legal pressure.

**June 1, 2025 – Plaintiff Submits Clarifying Follow-Up**

- Plaintiff emailed SAO to clarify that he had requested **audit logs for all BWC footage in their possession**, and that:
  *"The May 5, 2025 audit trail appears to omit prior download attempts, redaction history, and prior access."*
  He asked for logs reflecting "creation/modification/access" and expressed concern about "incomplete production."

**June 3, 2025 – SAO (Carmona) Misrepresents Request Scope**

- ASA Ada Carmona responded:
  *"You have received all the metadata our office has in reference to the two BWC you requested. There are no other records or logs we can provide, or any further explanation."*
  She framed the request as if it only pertained to the two specific Lamoureux videos, omitting Plaintiff's broader request for audit logs across all SAO-held BWC files.

**June 4, 2025 - SAO Follow-up on Missing Audit Logs**

- Plaintiff reiterated his March 2025 public records request, demanding access logs and metadata for all BWC videos in the SAO's possession, not just Lamoureux's. Plaintiff noted the prior audit trail only covered May 2025 onward and requested full access history. As of this date, no responsive records have been produced.

**June 5, 2025 – Rule 11 Threat by HCSO Counsel**

- HCSO legal counsel Jeffrey Jensen served a Rule 11 motion against Plaintiff, threatening sanctions unless Corporal Gregory Tindall was dismissed from the lawsuit.

**June 11, 2025 – Internal Affairs Report and Emails Released After Litigation**

- HCSO released the Internal Affairs report related to Plaintiff's January 1, 2023 arrest. The release came **19 days after Plaintiff filed his federal civil rights complaint** on May 23, 2025.
- Emails Released from IA including X22 email, emails to Chad Chronister and command staff.
- BWC released of Plaintiff's phone call with Figueroa.
- BWC released of Jan 1st incident with "I'm just gonna take him to jail" still redacted.

**Exhibit B Cover Page**

**B-1 Discovery Letter from Assistant State Attorney Alexander Wilde**

**B-2, B-3 Discovery Demand Letters from Plaintiff's Attorney**

IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF STATE OF FLORIDA IN AND FOR HILLSBOROUGH COUNTY
COUNTY CRIMINAL DIVISION

STATE OF FLORIDA                           CASE No.: 2023-CM-000014

VS

CONNOR THOMAS HUNTLEY                       DIVISION: F

## NOTICE OF DISCOVERY

THE STATE OF FLORIDA, in response to defense counsel's written Request for Discovery, pursuant

to Rule 3.220 Florida Rules of Criminal Procedure, furnishes the following information:

1.      Pursuant to Rule 3.220(b)(1)(i), Florida Rules of Criminal Procedure, the names and

addresses of all persons known to the State of Florida to have information which may be relevant to the

offense charged or any defenses thereto or to any similar fact evidence to be presented at trial under F.S.

90.404 (2) are as follows:

All other Category A Witnesses pursuant to Rule 3.220 (b)(1)(A)(i), F.R.CR.P.:

TATIANA  HUNTLEY (v)
10112 HAWTHORNE PLACE DR #204 RIVERVIEW FL 33578

DEPUTY BRANDON M GHABBOUR
261411 HCSO DPSD5 D5504

DEPUTY SYED W SALMAN
258673 HCSO DPSD5 D5504

DEPUTY REED A SERVICE
31936 HCSO DPSD5 D5504

DEPUTY AMELIA J TENNEY-LAMOUREUX
261977 HCSO DPSD5 D5508


Category B Witnesses pursuant to Rule 3.220 (b)(1)(A)(ii), F.R.CR.P.:

REBECCA M MACLEMAN
251420 HCSO  CTRRC


2023-000911/2023-CM-000014
Page 1 of 6
Notice of Discovery

2.    Below is a list of the information and material within the State's possession or control which will be produced for defense counsel to inspect, copy, test and photograph:

A)    Pursuant to Rule 3.220(b)(1)(B), Florida Rules of Criminal Procedure, Statements by persons whose names are furnished in compliance with Rule 3.220(b)(1)(i), Florida Rules of Criminal Procedure.

YES.

B)    Pursuant to Rule 3.220(b)(1)(C), Florida Rules of Criminal Procedure, written, recorded and/or oral statements of the accused.

YES. SEE POLICE REPORT PAGES 8. Cell Phone Videos.

C)    Pursuant to Rule 3.220(b)(1)(D), Florida Rules of Criminal Procedure, written recorded and/or oral statements of the co-defendants.

NONE.

D)    Pursuant to Rule 3.220(b)(1)(E), Florida Rules of Criminal Procedure, recorded Grand Jury minutes containing testimony of the accused.

NONE.

E)    Pursuant to Rule 3.220(b)(1)(F), Florida Rules of Criminal Procedure, tangible papers or objects obtained from or belonging to the accused.

NONE.

F)    Pursuant to Rule 3.220(b)(1)(G), Florida Rules of Criminal Procedure, material or information provided by a confidential informant.

NONE.

G)    Pursuant to Rule 3.220(b)(1)(H), Florida Rules of Criminal Procedure, electronic surveillance, pursuant to Chapter 934, Florida Statutes, of the premises of which the accused was a party, and documents relating thereto.

NONE.

H)    Pursuant to Rule 3.220(b)(1)(I), Florida Rules of Criminal Procedure, whether there has been any search or seizure and any documents relating thereto.

NONE.

I)     Pursuant to Rule 3.220(b)(1)(J), Florida Rules of Criminal Procedure, reports or statements by experts, including results of physical or mental examinations and of scientific tests, experiments or comparisons.

NONE.

J)     Pursuant to Rule 3.220(b)(1)(K), Florida Rules of Criminal Procedure, tangible papers or objects intended for use at hearing or trial which were not obtained from or belonged to the accused.

YES. Cell Phone Video is furnished via Evidence.com. Written Statements forwarded upon receipt. Body Worn Camera Video: Link to view and download will be provided by separate e-mail. (Evidence.com) 911 Call is furnished via Evidence.com. Photographs(s) is furnished via Evidence.com.

If the defendant in this case has been charged with driving under the influence or any other charge involving FDLE's Alcohol Testing Program, records relating to the Intoxilyzer, including instrument Files and Registration, Subject Test Electronic Data, Inspection Test and Other Electronic Data, Subject Test Statistics, Alcohol Reference Solutions, Dry Gas Standards, Evaluations and Research Studies, Correspondence and Miscellaneous Documents, are available for inspection and copying at https://www.fdle.state.fl.us/Alcohol-Testing-Program/Intoxilyzer-8000-Records.

K)     Pursuant to Rule 3.220(b)(1)(L), Florida Rules of Criminal Procedure, any tangible paper, objects or substances in the possession of law enforcement that could be tested for DNA.

NONE.

L)     Pursuant to Rule 3.220(1)(b)(M), Florida Rules of Criminal Procedure, whether the state has any material or information that has been provided by an informant witness.

NONE.

3.     Pursuant to Rule 3.220(b)(2), Florida Rules of Criminal Procedure, the following material information is within the State's possession or control which tends to negate the guilt of the accused as to the offense charged:  NONE.

4.     In addition, please be advised that any information contained in reports or other materials

provided to you pursuant to your request for discovery is deemed to be included in this response even if not

specifically noted above.

5.    At a time mutually convenient to the State of Florida and defense counsel, the State will disclose to defense counsel and permit them to inspect, copy, test and photograph all information and material within the State's possession and control pursuant to Florida Rules of Criminal Procedure 3.220(b)(iii) through (xi).

The State uses Evidence.com for the storing and sharing of digital evidence whenever possible. Copies of digital evidence stored in Evidence.com will be shared to the defense via a download link from Evidence.com. If indicated in discovery, a separate email will be sent with the instructions for accessing the files via an Evidence.com download link.

In the event that digital evidence cannot be shared through Evidence.com, whether it be due to the size, format, or the content of the digital evidence, the item is available for inspection and copying utilizing the following procedure:

o   If you wish to view the media at our office, please contact our Evidence Management and Trial Support Department (EMTS) at (813) 272-5400 to schedule a date and time to view the evidence. Please note that all media is not stored in the EMTS, therefore, adequate notice must be given to ensure that the item is available for your viewing.

o   If you wish to obtain a copy of digital evidence which is not available through evidence.com, you must submit a written request, along with two (2) blank DVD-Rs/CDs to make the copy, to our office. For FHP in-car videos, you must provide a 16GB or larger flash drive or blu-ray disc to our office. The items will be copied and made available for pick-up; please allow 14 days for pick-up. Contact the receptionist to determine whether or not your DVD, CD, blu-ray disc or flash drive is ready for pick-up. Copies not picked up within 30 days will be destroyed. For return by mail, you must provide a pre-paid, self-addressed envelope to our office. The United States Postal Service requires that media be sent by parcel post – visit usps.com to

determine the correct amount of postage for your return envelope. If your return envelope

does not have sufficient postage your media will be placed with our receptionist for pick-up.

If you have difficulties viewing or listening to digital evidence provided by our office, contact our

EMTS at (813) 272-5400 immediately so that we can determine what the problem is and work to remedy the

issue. EMTS may need to check your copy to determine the problem. It is imperative that you contact the

EMTS immediately with viewing or listening problems as we are unable to assist with problems during

court proceedings. Our office provides video and audio files in their native format.

6.    Pursuant to Rule 3.220(d)(1), Florida Rules of Criminal Procedure, the State of Florida expects

a written list of the names and addresses of all witnesses whom defense counsel expects to call as witnesses

at the trial or hearing of this case within seven days after receipt of the witness list furnished by the State of

Florida.

7.    Pursuant to Rule 3.220(d)(2), Florida Rules of Criminal Procedure, the State of Florida expects

a disclosure of the items set forth in subsections (i)-(iii) of Rule 3.220(d) within fifteen days after the

corresponding disclosure by the State of Florida.

8.    In addition to the above, be advised of the following: A copy of HCSO agency report number

2023-00000557 (14 pages) None. Any confidential NCIC/FCIC information has been redacted as indicated by

the blackout markings in the police report.  Criminal Report Affidavit attached. Confidential NCIC/FCIC

information has been redacted as indicated in the police report. Regarding statements of the accused, see

law enforcement reports and interview witnesses listed. All witnesses listed in the police report and

additional witnesses may be called to testify.

I HEREBY CERTIFY that a copy of the foregoing Notice of Discovery has been furnished by email to

JOSHUA G. SHERIDAN, ESQUIRE,  JOSH@MYTAMPAFIRM.COM, 3302 N TAMPA ST, TAMPA, FL 33603-5702,

attorney for defendant, CONNOR THOMAS HUNTLEY, this 7TH day of March, 2023.

Respectfully submitted,

SUSAN S. LOPEZ
STATE ATTORNEY

/s/ALEXANDER J. WILDE
MailProcessingStaff@sao13th.com
ALEXANDER J. WILDE
ASSISTANT STATE ATTORNEY
FLORIDA BAR #1035431
STATE ATTORNEY'S OFFICE
419 N PIERCE ST
TAMPA, FL 33602-4022
(813) 272-5400

AJW/bps

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CRIMINAL JUSTICE DIVISION**

**STATE OF FLORIDA**                        **CASE NUMBER: 23CM000014A**

**v.**

                                            **DIVISION: F**

**CONNOR THOMAS HUNTLEY**

### <u>NOTICE OF DISCOVERY</u>

The Defendant, pursuant to Florida Rule of Criminal Procedure 3.220, files written notice of election to participate in discovery and requests that the State Attorney, within fifteen (15) days after service hereof, disclose to defense counsel and permit counsel to inspect, copy, test, and photograph all information and material within the State's possession or control, including any video or audio recorded statements.

Furthermore, the Defendant, CONNOR THOMAS HUNTLEY, by and through the undersigned attorney, notices this Court that the Defendant requests of the prosecution, pursuant to <u>Brady v. Maryland,</u> 83 Sup.Ct. 1194 (1963); <u>U.S. v. Agurs,</u> 427 U.S. 97 (1976); <u>Williams v. Duton,</u> 400 F.2d 797 (5th Cir. 1968); <u>State v. Coney,</u> 294 So.2d 82 (Fla. 1974), and Rule 3.220(b)(4), Florida Rules of Criminal Procedure, any evidence within its possession or control which is material to guilt or punishment, (and) any evidence which tends to negate Defendant's guilt, (and), specifically any evidence favorable to the defense.

A CD/DVD has been provided to the State Attorney's Office to facilitate the duplication of any electronic audio/video recordings.

I HEREBY CERTIFY that a copy of the foregoing notice has been furnished to ALEXANDER J WILDE via e-mail to !mailprocessingstaff@SAO13th.com, Assistant State Attorney, Office of the State Attorney of the Thirteenth Judicial Circuit, on this 31st day of

January, 2023.

Respectfully submitted,
LAW OFFICE OF JULIANNE M. HOLT
PUBLIC DEFENDER

/s/ Julianne M. Holt
Florida Bar # 323195
For TIFFANY LEE HILTON
Florida Bar #: 1040644
Post Office Box 172910
Tampa, Florida 33672-0910
(813) 272-5980
(813) 388-4267 (fax)
hiltont@pd13.state.fl.us

Attorney for CONNOR THOMAS HUNTLEY

/gomezvance_l

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CRIMINAL JUSTICE DIVISION**

**STATE OF FLORIDA**                              **CASE NUMBER: 23CM000014A**

**v.**

**CONNOR THOMAS HUNTLEY**                    **DIVISION: F**

## DEFENDANT'S SUPPLEMENT TO THE DEFENDANT'S NOTICE OF DISCOVERY AND DEMAND FOR POTENTIAL *BRADY* AND *GIGLIO* MATERIAL

This Demand supplements the Notice of Discovery filed in this cause. Please take all

necessary steps to locate *Brady*[1] and *Giglio*[2] material in response to the Notice of Discovery filed

in this cause. Kindly provide any and all materials immediately upon knowledge or receipt of

such materials. This Supplement to the Notice of Discovery is based upon the *American Bar*

*Association Standards for Criminal Justice, Prosecution Function, § 3-3.ll(a-c) (3d Ed. 1993)*

which provides as follows:

Standard 3-3.11 Disclosure of Evidence by the Prosecutor

(a) A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused.

(b) A prosecutor should not fail to make a reasonably diligent effort to comply with a legally proper discovery request.

(c) A prosecutor should not intentionally avoid pursuit of evidence because he or she believes it will damage the prosecution's case or aid the accused.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Giglio v. United States*, 405 U.S. 150 (1972).

This motion is also supported by Rule 4-3.8 (c) of the Florida Rules of Professional
Conduct (Special Responsibilities of a Prosecutor), which requires a prosecutor to: "make timely
disclosure to the defense of all evidence or information known to the prosecutor that tends to
negate the guilt of the accused or mitigates the offense, and, in connection with sentencing,
disclose to the defense and to the tribunal all unprivileged mitigating information known to the
prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of
the tribunal." As will be explained below, "known to the prosecutor" does not solely mean *personally* known

Based upon these guidelines, the Constitution of the State of Florida and applicable case
law, please ensure that you are:

1.    **SPEAKING TO ALL MEMBERS OF THE "PROSECUTION TEAM."**

It is likely that many other people have worked on the pending case, either in your
office or in an investigative capacity. Please speak to anyone who has worked on the
case and determine whether they possess any information or have made any promises
that constitute *Brady* or *Giglio* material. This should include, but is not limited to:

A) **ALL EMPLOYEES OF THE STATE ATTORNEY'S OFFICE
INVOLVED WITH THE CASE.** If any attorney in your office has
knowledge of *Brady* or *Giglio* material, such knowledge will be
attributed to the entire office. See *Giglio v. United States*, 405 U.S.
150, 154 (1972) ("The prosecutor's office is an entity and as such it is
the spokesman for the Government."). This includes speaking with the
assigned victim advocate. *Commonwealth v. Liang*, 434 Mass. 131;
747 N.E.2d 112 (2001).

B) **ALL POLICE INVESTIGATORS WHO HANDLED THE CASE.**
See *Kyles v. Whitley*, 115 S. Ct. 1555, 1568 (1995) ("[N]o one doubts
that police investigators sometimes fail to inform a prosecutor of all
they know. But neither is there any serious doubt that 'procedures and
regulations can be established to carry [the prosecutor's] burden and to
ensure communication of all relevant information on each case to
every lawyer who deals with it.'" (citing *Giglio*)).

C) **ALL POLICE OFFICERS WHO WORKED ON THE CASE.** If
any law enforcement agencies participated in the investigation of the
case, those agents are part of the prosecution team. See *United States
v. Antoni*, 603 F.2d 566, 570 (5th Cir. 1979) ("extensive cooperation
between the investigative agencies convinces us that the knowledge of
the state team that [witness]' s lawyer was paid from state funds must
be imputed to the federal team."); *United States v. Spagnoulo*, 960
F.2d 990 (11th Cir. 1992); *Carey v. Duckworth*, 738 F.2d 875, 878
(7th Cir. 1984) ("[J]oint state-federal drug investigations are quite
common, and prosecutors should give some thought to these potential
problems of coordination. Being forewarned, they should not simply
assume that they have no responsibility for keeping abreast of
decisions made by other members of the team."); *United States v.
Safavian* 233 F.R.D. 12, 15 (D.C. 2005) ("In the course of their
investigation, and in collecting and reviewing evidence, the
prosecutors must ensure that any information relevant to this case that
comes into the possession, control, or custody of the Justice
Department remains available for disclosure."); *United States v.
Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992) 'There is no question
that the AUSA prosecuting a case is responsible for compliance with
the dictates of *Brady* and its progeny. This personal responsibility
cannot be evaded by claiming lack of control over the files or
procedures of other executive branch agencies."(citations omitted)).

D) **ANY LABORATORIES OR OTHER AGENCIES THAT DID
TESTING AS PART OF THE INVESTIGATION.** If such testing
was requested, you should contact the laboratories responsible to
determine if any of their initial or presumptive findings or their results
are exculpatory. *See United States ex rel. Smith v. Fairman*, 769 F.2d
386,391 (7th Cir. 1985); *Barbee v. Warden, Md Penitentiary*, 331
F.2d 842,846 (4th Cir. 1964).

2. **REVIEWING ALL CASE FILES MAINTAINED BY YOUR OFFICE AND ANY**

   **LAW ENFORCEMENT AGENCIES TO ENSURE THAT ALL *BRADY* AND**

   ***GIGLIO* MATERIAL IS DISCLOSED TO THE DEFENSE.**

   At times, police officers or law enforcement agents will not provide the prosecution

   with all of the information collected during their investigation. Nonetheless, the

   prosecutor is responsible for reviewing all of the information in their investigative

   files, to make sure that all exculpatory material is turned over to the defense. *See, e.g.,*

*Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002); the prosecutor must "timely disclose, upon request, the names and addresses of all persons 'known to the prosecutor to have information that may be relevant to any offense charged or any defense thereto.'" *Smith v. State*, 882 So. 2d 1050, 1053 (Fla. 4th. DCA, 2004), *quoting Section 3.220(b)(1)(A), Florida Rules of Criminal Procedure.* The *Smith* case clearly states that "though the rule requires disclosure of persons 'known to the prosecutor,' case law makes clear that the knowledge of law enforcement officers is imputed to the prosecutor for purposes of this rule." *See: Griffin v. State* 598 So.2d 254, 256 (Fla. 1st DCA 1992); *Hutchinson v. State* 397 So.2d 1001 (Fla. 1st DCA 1981)." *Smith* at 1053. Please be on notice that case files are mostly electronic in this digital age but also may exist in hard copy and may include (but are not limited to) items such as dash cameras, body cameras, pole cameras, cell phone cameras, surveillance cameras, other video and audio files, two-way dispatching messaging, 911 calls, photographs, documents, writings, records stored on cloud computing or FTP (File Transfer Protocol), Versadex, websites, computers, laptops, iPads, tablets, cellular phones, smart phones, emails, electronic communications, text massages, instant messages, backups of any device, hard drives, backup hard drives, photographs, social media accounts including but not limited to Facebook, Google, AOL, Yahoo, Twitter, Instagram, Snap Chat, Google, AOL, Yahoo, Twitter, Instagram, Snap Chat, fingerprints, DNA, other lab analysis, handwritten notes of law enforcement officers or other witnesses, and disciplinary, internal affairs or personnel actions against law enforcement or other witnesses

**3. INVESTIGATING STATE WITNESSES.**

Material that impeaches a government witness must be disclosed to the defense and any

impeachment material that you either possess or can access must be disclosed. This

should include, but is not limited to:

A) **EXAMINING THE PERSONNEL FILES OF ALL OFFICERS WHO MAY TESTIFY AT TRIAL.** If there is impeachment evidence regarding any officers involved with the investigation of the case, especially those who may testify at hearings or at trial, it must be disclosed to the defense. *See, e.g., Nuckols v. Gibson*, 233 F.3d 1261 (l0th Cir. 2000); *United States v. Muse*, 708 F.2d 513 (l0th Cir. 1983); *United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992).

B) **EXAMINING THE PERSONNEL FILES OF ALL PROSECUTION WITNESSES WHO WORK FOR THE GOVERNMENT.** If any prosecution witnesses work for other branches of the government, please search their personnel files for impeachment evidence, as with the files of law enforcement officers. *See, e.g., United States v. Deutsch,* 475 F.2d 55 (5th Cir. 1973), overruled on other grounds by *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (holding that contents of postal worker's personnel file, if they could be used for impeachment, would constitute *Brady* material).

C) **SEARCHING FOR ALL CRIMINAL RECORD DATABASES TO WHICH YOU HAVE ACCESS FOR CRIMINAL RECORDS OF POTENTIAL PROSECUTION WITNESSES.** Please check both local and national databases for any criminal convictions of state witnesses. See *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991) (holding that failure to search a local criminal database for informant's criminal convictions is *Brady* violation). Failure to run checks on state witnesses "does not change 'known' information into 'unknown' information within the context of the disclosure requirements." United *States v. Auten*, 632 F.2d 478,481 (5th Cir. 1980) (holding that failure to run FBI or NCIC checks on a prosecution witness constitutes a *Brady* violation).

D) **EXAMINING THE FILES FROM OTHER GOVERNMENTAL AGENCIES THAT HAVE INVESTIGATED STATE WITNESSES.** *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60 (1987) (holding that defendant was entitled to have court conduct in camera examination of Child and Youth Services (CYS) file investigating defendant's alleged rape of his daughter to determine if it contained *Brady* material).

E) **ASKING THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT (FDLE), FEDERAL BUREAU OF INVESTIGATION (FBI), DRUG ENFORCEMENT AGENCY (DEA), AND ALL POTENTIAL POLICE DEPARTMENTS IF THEY HAVE FILES ON ANY STATE WITNESSES.** Cooperation agreements that any State witnesses have made in the past are *Brady*

material and must be disclosed to the defense. The State is charged with constructive notice of all evidence in the hands of its agents, including police. *Smith v. State*, 882 So.2d 1050 (Fla. 4th DCA 2004). Important materials related to confidential informants include but are not limited to: past cases that the informant cooperated in including all proffers, immunity and other agreements, validation assessments, payment information, tax reporting compliance, and favorable charge reduction or non-filing or reduced sentencing.

F) **EXAMINING THE PRE-SENTENCE INVESTIGATIONS AND PROBATION FILES OF ALL WITNESSES, IF THEY EXIST.**
This is to determine:

1) Exculpatory information in a witness's probation file, including the witness's criminal record or personal information that could be used for impeachment. *See, e.g.*, *United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988). *See also: U.S. v. Smith*, 77 F.3d 511, 513 (D.C. 1996).

2) Pre-sentence Investigation Reports (PSI's) and Pre-Sentence Reports (PSR' s) of any government witnesses must be provided to the trial court for in camera examination to determine whether they contain *Brady* or *Giglio* material. *See, e.g.*, *United States v. Jackson*, 978 F.2d 903, 909 (5111 Cir. 1992), *cert. denied*, 113 S. Ct. 2429 (1993).

G) **EXAMINING COUNTY JAIL RECORDS.**
Please speak to the Hillsborough County Jail or other jails or holding facilities where State witnesses may have been detained to ensure that incarcerated witnesses have not engaged in misconduct while awaiting trial. *See, e.g., United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (State's failure to disclose evidence that state witness tested positive for marijuana use while released on bond.); *See also* **U.S. v. Andrews**, 824 F.Supp. 1273, 1275-1276 (S.D.Cal 1993) *and United States v. Burnside*, 824 F. Supp. 1215, 1258 (N.D. Ill. 1993). (State's key witness, who continually used drugs and communicated with other state witnesses throughout incarceration).

H) **EXAMINING DEPARTMENT OF CORRECTIONS RECORDS.**
Please speak to the Department of Corrections where State witnesses may have been incarcerated. *See, e.g., Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (*en banc*) ("The state had an obligation, before putting [a career burglar and six-time felon] on the stand, to obtain and review [his] corrections file, and to treat its contents in accordance with the requirements of *Brady* and *Giglio*.")."The prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf." (Prosecution failed to disclose witness's long history of lying to the police and blaming his crimes on others.)

The Defense is mindful that some areas being requested for review might involve inadmissible evidence. The Florida Supreme Court has ruled that even though evidence may be inadmissible, information that might lead to admissible evidence is required to be turned over. See *Rodgers v. State*, 782 So. 2d 373 (Fla. 2001) and *Hurst v. State*, 18 So. 3d 975 (Fla. 2009). Timely disclosure of all above request records, information, and material is required so that there is adequate time for the defense to investigate and potentially use the material provided at all stages of pre-trial discovery and at trial. See. *Whites v. State*, 730 So. 2d 762 (Fla. 5th DCA 1999).

Finally, please be on notice that this case is being prepared for trial. Please not construe any discussions about potential plea offers as alleviating the State of Florida of its duties to provide exculpatory and impeachment evidence. It is only after my client has the benefit of all relevant *Brady* and *Giglio* evidence, complete discovery, and reasonable time to consult with me that my client will be in a position to reasonably consider any plea offer that you the State may make.

I HEREBY CERTIFY that a copy of the foregoing has been furnished to ALEXANDER J WILDE, Assistant State Attorney, Office of the State Attorney of the Thirteenth Judicial Circuit, at !mailprocessingstaff@sao13th.com on this 31st day of January, 2023.

Respectfully submitted,

LAW OFFICE OF JULIANNE M. HOLT
PUBLIC DEFENDER

/s/ TIFFANY LEE HILTON
Florida Bar #1040644
Post Office Box 172910
Tampa, Florida 33672-0910
(813) 272-5980
(813) 388-4267 (fax)

hiltont@pd13.state.fl.us

**Attorney for CONNOR THOMAS HUNTLEY**

## Exhibit C Summery

Audit Discrepancy Table and Chain-of-Custody Analysis

Based on Verified Evidence.com Logs from the 13th Judicial Circuit SAO

This exhibit contains verified audit records produced by the Office of the State Attorney for the 13th Judicial Circuit. These records confirm that body-worn camera (BWC) footage and 911 call recordings from Plaintiff's arrest on January 1, 2023, were uploaded, logged, and accessed by the State before Plaintiff was coerced into a plea. The files identified below were either corrupted, withheld, redacted, or never produced — despite being logged and viewed in January 2023.

| File / Title | SHA-256 Hash | Uploader | SAO Access Date | Discovery Status | Discrepancy |
|---|---|---|---|---|---|
| Reed Service BWC #1 | defb27 . . . | Service (31936) | Jan 6 & Aug 3, 2023 | Yes (corrupt file) | Hash mismatch; altered or substituted |
| Reed Service BWC #2 | 9c22bf . . . | Service (31936) | Wilde accessed Jan 29 | No | Never disclosed |
| Syed Salman BWC #1 | 983a19 . . . | Salman (258673) | Jan 6 & Aug 3, 2023 | No | Never disclosed |
| Syed Salman BWC #2 | d27335 . . . | Salman (258673) | Jan 6 & Aug 3, 2023 | No | Never disclosed |
| Lamoureux BWC | dfc559 . . . | Lamoureux (261977) | Jan 6, 2023 | Yes (corrupt file) | Hash mismatch; altered or substituted |
| Ghabbour BWC | fa56be . . . | Ghabbour (261411) | Jan 6, 2023 | Yes | Only BWC file that matched |

**Narrative Summary**

These audit records — now confirmed across multiple files — directly contradict HCSO's and
SAO13's claims that no such evidence existed or was available. As early as January 6, 2023, and
as late as August 3, 2023, the State Attorney's Office accessed multiple digital files whose
contents were either withheld, corrupted, or never disclosed. These include BWC files from
Deputies Reed Service, Salman, and Lamoureux — all central to Plaintiff's arrest. The
suppression of these verified materials constitutes spoliation, Brady violations, and obstruction
of access to the courts.



**State Attorney Office 13th - FL**

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:55:11 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

▲ AXON

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | Axon Body 3 |
| Categories | | Device Name | X60318541 |
| Title | DOMESTIC - JUST OCCURRED, ARREST, Reed A Service, 31936 | Serial Number | X60318541 |

| | | | |
|---|---|---|---|
| Document Checksum | Sha2-<br>defb27c551257fe869d1c60f690f8af10163f82e0cc68e2ff2fdb9b<br>8a5948e22 | | |
| Record Start | 01 Jan 2023 04:07:20 | | |
| Uploaded | 01 Jan 2023 08:02:03 | **Usage** | |
| Uploader | Service, Reed (Badge ID: 31936) | | |
| Unique ID | E810A6070AAD448883DC1B48E14F24FD | Page views | |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | 03 Aug 2023 09:55:11 |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:54:01 (-05:00) | System | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:54:02 (-05:00) | System | Evidence copy created at agency State Attorney Office 13th - FL |

**State Attorney Office 13th - FL**

▲ AXON

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:52:38 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | None |
| Categories | | Device Name | None |
| Title | DOMESTIC - JUST OCCURRED, ARREST, Reed A Service, 31936 | Serial Number | None |
| Document Checksum | Sha2-9c22bfdc1c5b530da2f3e19b37dad5c5bb7e9cc379067112cbe69bd2acb86768 | | |
| Recorded | 01 Jan 2023 04:47:26 | | |
| Uploaded | 01 Jan 2023 07:08:25 | Usage | |
| Uploader | Service, Reed (Badge ID: 31936) | | |
| Unique ID | E869299047CE461E87046B534E7DF911 | Page views | 1 |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | 03 Aug 2023 09:52:38 |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:41:12 (-05:00) | System | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:41:13 (-05:00) | System | Evidence copy created at agency State Attorney Office 13th - FL |
| 3 | 29 Jan 2023 | 21:04:10 (-05:00) | Wilde, Alexander (Badge ID: 13604) Username: AWilde User ID: 797a5ae34b8f41c1b17f923768d65c39 | Evidence Record Accessed. Client IP Address: 209.255.176.81 |

1

**State Attorney Office 13th - FL**

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:52:35 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

▲ AXON

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | None |
| Categories | | Device Name | None |
| Title | DOMESTIC - JUST OCCURRED, ARREST, Syed W A Salman, 258673 | Serial Number | None |

| | | | |
|---|---|---|---|
| Document Checksum | Sha2-983a19724794bc68b2ac209ad6b5f581ecb2d77f866343024f9e7e6b86c7f47a | | |
| Recorded | 01 Jan 2023 04:23:07 | | |
| Uploaded | 01 Jan 2023 04:45:07 | **Usage** | |
| Uploader | Salman, Syed (Badge ID: 258673) | | |
| Unique ID | F2BE2756F5904224BC7437C13D77FB99 | Page views | |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | 03 Aug 2023 09:52:35 |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:40:55 (-05:00) | System | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:40:55 (-05:00) | System | Evidence copy created at agency State Attorney Office 13th - FL |



**State Attorney Office 13th - FL**

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:55:53 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

## AXON

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | **Axon Body 3** |
| Categories | | Device Name | **X6030348Y** |
| Title | **DOMESTIC - JUST OCCURRED, ARREST, Syed W A Salman, 258673** | Serial Number | **X6030348Y** |

| | | | |
|---|---|---|---|
| Document Checksum | **Sha2-d273352596fd8ed8e4d3ccf72d621f7e620cda449a64b0955d3533453d8c1825** | | |
| Record Start | **01 Jan 2023 04:03:20** | | |
| Uploaded | **01 Jan 2023 07:22:37** | Usage | |
| Uploader | **Salman, Syed (Badge ID: 258673)** | | |
| Unique ID | **95E4424D883A4998AEB04E36CF346521** | Page views | |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | **03 Aug 2023 09:55:53** |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:57:15 (-05:00) | **System** | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:57:15 (-05:00) | **System** | Evidence copy created at agency State Attorney Office 13th - FL |



**State Attorney Office 13th - FL**

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:54:42 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

▲ AXON

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | **Axon Body 3** |
| Categories | | Device Name | **X60313472** |
| Title | **DOMESTIC - JUST OCCURRED, ARREST, Amelia J Tenney-Lamoureux, 261977** | Serial Number | **X60313472** |
| Document Checksum | Sha2-dfc55936a5d5d67c1164b7784866c61156ca50decb7496a2cc5b4583c33ea703 | | |
| Record Start | **01 Jan 2023 04:03:23** | | |
| Uploaded | **01 Jan 2023 09:07:55** | Usage | |
| Uploader | **Tenney-Lamoureux, Amelia (Badge ID: 261977)** | | |
| Unique ID | **5328E695F3DF4CFD98E7054A56317E98** | Page views | |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | **03 Aug 2023 09:54:42** |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:45:24 (-05:00) | **System** | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:45:25 (-05:00) | **System** | Evidence copy created at agency State Attorney Office 13th - FL |

1



**State Attorney Office 13th - FL**

**Tampa, FL, US**

*Document generated: 03 Aug 2023 - 09:53:24 -04:00 by State Attorney Office 13th - FL(N/A)*

*Audit Trail Date Range: 06 Jan 2023 - 03 Aug 2023*

**AXON**

## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|---|---|---|---|
| Evidence ID | HS20230000557 | Device Type | Axon Body 3 |
| Categories | | Device Name | X6030532Z |
| Title | DOMESTIC - JUST OCCURRED, ARREST, Brandon M Ghabbour, 261411 | Serial Number | X6030532Z |
| | | | |
| Document Checksum | Sha2-fa56be3214013cc1eb4c35ad84565a4fe3c9ec01a56365854b3b8a4c41aec29c | | |
| Record Start | 01 Jan 2023 04:07:21 | | |
| Uploaded | 01 Jan 2023 08:20:40 | Usage | |
| Uploader | Ghabbour, Brandon (Badge ID: 261411) | | |
| Unique ID | EE13D1494C9A445A9A76DA3A8EF32FF2 | Page views | |
| | | File downloads | |
| | | Video playbacks | |
| | | Last Viewed Or Downloaded On | 03 Aug 2023 09:53:24 |

| # | Date | Time | User | Activity |
|---|---|---|---|---|
| 1 | 06 Jan 2023 | 10:47:32 (-05:00) | System | Evidence Record Added to Case '23-CM-000014' |
| 2 | 06 Jan 2023 | 10:47:33 (-05:00) | System | Evidence copy created at agency State Attorney Office 13th - FL |

**Exhibit C-7 Cover Page  – Defense Discovery Review Notes**

Dated March 15, 2024, these notes by defense counsel confirm that only Deputy Ghabbour's body-worn camera file was reviewed. Discovery did not include footage from Deputies Salman, Lamoureux, or Service, despite audit logs showing that these recordings were in the State's possession. This confirms that key exculpatory materials were not disclosed to the defense.

## Video Evidence

### Video: "Hit_me_2.55am.MOV" - 00:29

- CL putting the child down for bedtime in child's crib, removing child's pants for bedtime
- OP recording from across the room
- CL grabs the phone as he walks past OP (POSSIBLE BATTERY)
- CL then goes into another room, closes the door.
- OP attempts to follow him

### Video: "2.26am_01_01_23.MOV" - 00:07

- Recording from approx 10-20 feet away
- CL at rear passenger side of vehicle, leaning into car
- CL is speaking, but what he's saying is unclear
- No contact or statements w/ the person recording

### Video: "2.43am_.MOV" - 01:00

- Video starts w/ CL sitting on couch with child
- Recording is from 10-15 ft away; Couch in-between recording person and CL
- CL kissing child and cuddling child; Recording zooms in
- OP telling CL that "she has to sleep"
- CL says "Momma wants to destroy Ukraine… She's messed up…. She doesn't know what's right…" 0:27
- 0:35 - "Our judges here will watch everything… she won't ever have any control…"
- CI says something about, "Her attitude" or "this attitude" (unintelligible) and
- ***RELEVANCE?***

### Video: "2.56am_1.1.23MOV" - 00:30

- CL walking into a bedroom; CL says he's "trying to do something for your daughter"
- CL then walks to the kitchen, goes into the fridge, CI gets bottle from fridge
- CL calls OP worthless and OP says he's worthless and drunk
- CL says that she just plays with her friends and she's a terrible mother

- CL says he can't believe he picked her out of all the girls in Russia
- CL then knocks the phone from her hand

## Video: "3am_01_01_23.MOV" - 03:01

- Recording begins shooting towards a partially opened bedroom door
- CI saying "You fucked up you stupid bitch...I.. fucking..."
- Recorder enters child's room
- OP recording CL
- CL dressing baby
- OP saying that CL is drunk
- CL claims that OP will try to use the videos against CL
- CL yelling that he doesn't want child to go to Russia.

## Video: "2.26am_01_01_23.MOV" - 00:07

- Recording from approx 10-20 feet away
- CL at rear passenger side of vehicle, leaning into car
- CL is speaking, but what he's saying is unclear
- No contact or statements w/ the person recording

## Video: "Hit_me_with_a_car_2.27am_01_01_23.MOV" - 01:03

- OP standing behind CL's car
- OP's "friend" LATER shown as a guy in a green shirt and speaking Russian; says "Connor"
- CL puts car in reverse, the lights are on; CL backs up at 0:28;
- CL begins backing up vehicle
- Car appears to make contact w/ OP
- OP telling CL to leave the car and that he's drunk
- OP does back the car up slowly

## Audio: "911-024539_C1" - 02:37

- 911 Call
- OP saying that CL was driving drunk with baby in car seat. OP claims that CL is not letting the child sleep. OP claims that CL is drunk
- OP says that he's holding the baby and not letting child sleep and he's drunk
- Operator asks if she's "fighting with him"; she says kinda
- CL speaking in the background
- OP says that CL is talking to "you against me"
- OP says that he hasn't put his hands on her

## Audio: "911-035230_C3" - 03:06

- 911 Call
- OP calling because police officers came and gave a report number
- Husband just physically touched me
- CL crying...
- Operator asks... I don't want to be around him. I was about to go to my friends and he took the keys to our cars. I don't have any keys. CL put the keys in his underwear. OP tried to grab the keys from his underwear. "I started to pull the underwear to take the key" He pushed me towards the baby's crib.
- OP says that "Him pushing you is physical"
- Operator asks if she has injuries... OP says yes her hand is burning
- CL and OP are in separate rooms
- OP says he has a gun and it's under the bed

## Audio: "911-024539_C1" - 02:37

- 911 Call
- OP saying that CL was driving drunk with baby in car seat. OP claims that CL is not letting the child sleep. OP claims that CL is drunk
- OP says that he's holding the baby and not letting child sleep and he's drunk
- Operator asks if she's "fighting with him"; she says kinda
- CL speaking in the background
- OP says that CL is talking to "you against me"

Body Cam: "DOMESTIC_-
_JUST_OCCURRED,_ARREST,_Brandon_M_Ghabbour,_261411" -
7:42

- Officer driving and Audio begins at 0:59
- Officer makes contact w/ Guy w/ Russian accent; who is "just a friend"
- Officer walks up the stairs
    - OP is speaking w/ another officer, female
- Officer walks into house
    - CL is speaking w/ a male officer
- CL says he didn't lay a hand on her; The officer that came before told CL that if he put his hands on anyone that someone would have to go 04:09:13
    - CL says that wife is on a 1099 and that he has to work
- Officer goes back out
    - CL is on her phone; Officer walks past her
    - Audio turned off
    - Officer speaking w/ 2 other officers; female that was interviewing OP
    - Audio goes back on
    - OP says that the friend "Saw everything on camera when it started"
    - OP talking w/ LEOs about a prior time that called LEOs and "he escaped" and OP said to forget it 04:12:22
    - OP says baby was in the crib when he pushed her
    - Another Officer has OP swear/affirm that what she said is true
        - Recording officer walks away
        - OP claims that there's a mark on her arm
        - OP claims that she didn't  agree to being "pushed"
        - Officers asked if OP wanted to do a written statement

He went to the living room and .He grabbed my key and put it in his underwear. He wouldn't let me to leave.

Was there another key laying around for that car? Another key, a second key, was in the drawer in the bedroom.

Why didn't you get that key? Because I usually use the first key and the second key we never used before.

Did you know about it at the time? I knew about it. But I never used it.

Did you try and get the key? No, I didn't try. I didn't try to take them.

Did you approach your husband with the key in his underwear? Yes, I tried to take them away from him.

What did he do in response? He tried to grab my hand and pushed me towards the crib.

Do you remember which hand he used to push you and grab you? I don't know what hand he used me, but I hit my left hand from the crib like this, because I landed on the crib like this. Which where baby was sleeping- like laying she wasn't sleeping at that time yet.

…

How did you end up on the crib? He pushed me because I tried to take the key and we started fighting. So he pushed me away from  him and I landed on the crib.

## Exhibit D

### Body-Worn Camera (BWC) Transcript Excerpts

The following transcript excerpts are taken directly from body-worn camera recordings captured
by Hillsborough County Sheriff's Office deputies on January 1, 2023, and are referenced
throughout the Complaint as critical exculpatory evidence. These excerpts demonstrate that the
complainant admitted to initiating physical contact and that Plaintiff acted defensively.

### Deputy Lamoureux (First 911 Call Response)

*Complainant:* "Nothing got physical."

*Lamoureux:* "Then I can't do anything.

*Lamoureux:* If I have to come back out here, one of you is going to jail. I can't guarantee who."

### Deputy Salman and Complainant (Initial Encounter, Second 911 Call)

*Complainant:* "I was trying to leave, and he took my key and put them in his underwear. I tried
to take the key and he started to pull me and he pushed me into the crib and I hurt myself, and he
peacefully went to lay down and said I'm going to work tomorrow."

*Salman:* "So you guys are fighting again and he took your car keys and put them in his
underwear and you tried to take them from him, and he pushed you?"

### Complainant Statement to Deputy Lamoureux (Second 911 Call Response)

*Complainant:* "He went to the kitchen to put his key in his underwear, I saw this was like ok let
me to leave, so I tried to pull his underwear to take his key, he started to get away from me and I
started to grab his underwear and hes like stop touching me and pushed me away towards the
crib..."

*Lamoureux:* "Was he trying to get away from you?"

*Complainant:* "Yeah. I think to like get away."

**Deputy Ghabbour and Deputy Lamoureux (Second 911 Call BWC)**

*Ghabbour (after unmuting):* "I don't see charging him with touching her at all — what's going on?"

*Lamoureux:* "I told him if I had to come back, he was gonna go to jail."


**Deputy Reed Service (Complainant Sworn Statement, Off-Camera)**

*Service (to complainant):* "Did he push you?"

*Complainant:* "Yes."

*Service:* "And you didn't want to be pushed?"

*Complainant:* "No."


**Deputy Salman (Transport Vehicle Conversation)**

*Plaintiff:* "This is basically an unlawful arrest. Other than her statements, there's no evidence."

*Salman:* "No, it's not."

*Plaintiff:* "I didn't touch her, man."

*Salman:* "In a domestic violence situation, it's out of our hands. We have to act on it — if you have a child together and you guys are living together."


**Deputy Lamoureux and Deputy Salman (Post-Interview Decision Point – Second 911 Call)**

*Location: Outside vehicle, while Plaintiff is already detained*

**Lamoureux:** "I just wanted to fill you in on earlier."

**Salman:** "I'm just gonna take him to jail."

*(Lamoureux laughs)*

These quotes corroborate Plaintiff's claim that the arrest was not based on individualized
probable cause but on departmental SOP. They also confirm that material exculpatory evidence
was withheld from discovery in violation of Brady v. Maryland.



**HILLSBOROUGH COUNTY SHERIFF**
**GENERAL OFFENSE HARDCOPY**

GO# HS 2023-557 CLEARED BY ARREST          BATTERY-2 BATTERY-SIMPLE

## General Offense Information

Operational status: **CLEARED BY ARREST**
Reported on: **Jan-01-2023 (Sun.) 353**
Occurred on: **Jan-01-2023 (Sun.) 353**
Approved on: **Jan-02-2023 (Mon.)** by: **153485 - Hallberg-Calebro, Jessica**
Report submitted by: **258673 - Salman, Syed**
Org unit: **D5 Night B NORA Squad**
Address: **10112 HAWTHORNE PLACE DR**    Apartment: **204**
         Municipality: **HILLSBOROUGH COUNTY**
         District: **D5**  Beat: **N03**  Grid: **HS3710**
Felony/Misdemeanor: **MISDEMEANOR**
Special study: **Persons - Domestic Violence**
Family violence: **Yes**

## Offenses (Completed/Attempted)

Offense: # **1  BATTERY-2  BATTERY-SIMPLE - COMPLETED**
Location: **Residence/Home (Residential Driveways/Yards)**
Offender suspected of using: **Not Applicable**
Weapon type: **Personal Weapons (Hands,Fist,Feet,Teeth, Etc)**
Bias: **None (no bias)**



**HILLSBOROUGH COUNTY SHERIFF**
GENERAL OFFENSE HARDCOPY

GO# HS 2023-557 CLEARED BY ARREST                    BATTERY-2 BATTERY-SIMPLE

# Related Event(s)

AB      HS2023-25
CP      HS2023-557

# Related Person(s)

## 1. Victim # 1 – HUNTLEY, TATIANA

### (Case Specific Information)

Sex: **Female**
Race: **WHITE**
Date of birth: **Dec-22-1996**
Address: **10112 HAWTHORNE PLACE DR**
            Municipality: **RIVERVIEW , Florida   33578**
            District: **D5**   Beat: **N03**   Grid: **HS3710**
**Phone Numbers**
            Cellular:   **(813) 323-2466**

**Particulars**

Place of birth: **Russia**
Citizenship: **Other**
Language(s) spoken: **English**
Height: **5'04** Weight: **120 lbs.**
Build: **Thin**   Complexion: **Fair**
Handed: **Right Handed**
Hair color: **Blond or Strawberry**
Hair style: **Long**

**Master Name Index Reference**

Name: **HUNTLEY, TATIANA**
Sex: **Female**
Race: **WHITE**
Date of birth: **Dec-22-1996**
Address: **10112 HAWTHORNE PLACE DR**
            Municipality: **RIVERVIEW , Florida   33578**
            District: **D5**   Beat: **N03**   Grid: **HS3710**
**Phone numbers**
Cellular:   **(813) 323-2466**

**Linkage factors**

Resident status : **Resident (Hillsborough County)**
Age range : **22-29 Years**
Type of injury : **Apparent Minor Injury**
Victim of :
**BATTERY- 2  BATTERY-SIMPLE -  COMPLETED**



Victim's Relationship to Offender : **Victim Was Spouse**
Person's role : **Arrestee #1**
Person's name : **HUNTLEY, CONNOR, T (DOB: Jul-20-1992)**

## 2. Arrestee # 1 – HUNTLEY, CONNOR THOMAS

### (Case Specific Information)

Sex: **Male**
Race: **WHITE**
Date of birth: **Jul-20-1992**
Address: **10112 HAWTHORNE PLACE DR**   Apartment: **204**
    Municipality: **RIVERVIEW , Florida   33578**
    District: **D5**  Beat: **N03**  Grid: **HS3710**

**Phone Numbers**
    Home:   **(813)  657-9875**
    Business:  **(813)  507-3652**
    Cellular:  **(813)  5174919**

### Particulars

Place of birth: **Ohio**
Citizenship: **America – United States of**
Marital status: **Single**
Ethnicity: **Not Hispanic or Latino**
Language(s) spoken: **English**
Height: **5'11** Weight: **120 lbs.**
Disability: **No**
Build: **Other (Explain)**   Complexion: **Medium**
Handed: **Right Handed**
Eye color: **Brown**
Hair color: **Brown**
Hair style: **Short**
Additional remarks: **TRESPASSED FROM BLOOMINGDALE WOODS APTS**

### Master Name Index Reference

Name: **HUNTLEY, CONNOR  THOMAS**
Sex: **Male**
Race: **WHITE**
Date of birth: **Jul-20-1992**
Ethnicity: **Not Hispanic or Latino**
Address: **10112 HAWTHORNE PLACE DR**   Apartment: **204**
    Municipality: **RIVERVIEW , Florida   33578**
    District: **D5**  Beat: **N03**  Grid: **HS3710**
**Phone numbers**
Home: **(813)  657-9875**
Business: **(813)  507-3652**
Cellular: **(813)  517-4919**

**HILLSBOROUGH COUNTY SHERIFF**
## GENERAL OFFENSE HARDCOPY

GO# HS 2023-557 CLEARED BY ARREST                     BATTERY-2 BATTERY-SIMPLE

## Charge Summary

### Charge # 1

Offense date: Jan-01-2023 (Sun.) 353
Offense :  **BATTERY (DVST0001)**
Charge statute: **MD  784.03(1)(A)1**
Charge severity: **Misdemeanor First Degree**
Docket #: **23-CM-000014-A**
Domestic Violence: **Yes**
Bond: **500.00**
Fine: **0.00**
SHO points: **0**
Disposition date: **Jan-02-2023 (Mon.)**
Court: **41F**

## Linkage factors

Resident status : **Resident (Hillsborough County)**
Age range : **30-49 Years**
Armed with : **Unarmed**
Offense: **BATTERY- 2  BATTERY-SIMPLE  - COMPLETED**
Arrest date: **Jan-01-2023 (Sun.)**
Arrest type: **Onview ( Taken into custody without a warrant or previous report)**

## 3. SubjectJUV # 1 - HUNTLEY, ANNA VICTORIA

## (Case Specific Information)

Sex: **Female**
Race: **WHITE**
Date of birth: **Aug-17-2022**
Address: **10112 HAWTHORNE PLACE**   Apartment: **204**
          Municipality: **RIVERVIEW , Florida   33578**

## Particulars

Ethnicity: **Not Hispanic or Latino**

## Master Name Index Reference

Name: **HUNTLEY, ANNA  VICTORIA**
Sex: **Female**
Race: **WHITE**
Date of birth: **Aug-17-2022**
Ethnicity: **Not Hispanic or Latino**
Address: **10112 HAWTHORNE PLACE**   Apartment: **204**
          Municipality: **RIVERVIEW , Florida   33578**

## Linkage factors

Resident status : **Resident (Hillsborough County)**
Age range : **0-1 Year**


## Narrative Text

   **Type** INVESTIGATION
   **Author** 258673 - Salman, Syed
  **Related Date** Jan-01-2023 5:23

On 01/01/2023, at approximately 0357 hours, I responded to a residence located at 10112 Hawthorne Place, Apt 204, Riverview, FL 33578 in reference to a domestic battery just occurred call for service.

Prior to this incident, there have been multiple calls for service regarding verbal altercations between the same two parties involved, but this was the first incident where a physical altercation had occurred.

Upon arrival, at approximately 0402 hours, I came in contact with the victim, Tatiana Huntley, who advised her husband/ arrestee, Connor Huntley, got into a verbal and physical altercation (see interview). I observed redness and minor scratch marks on Tatiana's left elbow, but she refused any medical assistance at the incident scene. I then came in contact with the arrestee, Connor Huntley, in reference to the incident (see interview). I observed a small scratch on the right side of Connor's face, but he advised the altercation between him, and Tatiana was strictly verbal and refused any medical assistance.

Through my investigation, I learned that Connor and Tatiana got into a verbal altercation. The altercation occurred in the bedroom of the above mentioned location. The altercation became physical when Connor unlawfully and knowingly delivered an open palm shove to Tatiana with both hands. Tatina then fell on their baby's crib, which was placed within their shared bedroom. Due to Connor's actions, Tatiana suffered redness and minor scratch on her left elbow. This action was against Tatiana's will. Connor and Tatiana have been in a romantic relationship as husband and wife for approximately three years. Connor and Tatiana have also been currently living together as a family for approximately three years. Connor and Tatiana also have a five-month-old baby, who was sleeping in the crib during the altercation. Tatiana positively identified Connor as the person who committed the battery at the incident scene. Connor's identity was further positively identified via DHSMV photograph.

Deputy Service (ABN 31936) responded to the incident scene to assist me with my investigation. Deputy service captured digital photographs of Tatiana with my HCSO issued iPhone. I then later uploaded the digital photographs to Evidence.com. Deputy Service also collected a signed Written Statement and a signed Document of Oath from Tatiana, and later submitted the documents as MRE attachments.

Post Miranda, I attempted to interview Connor, but he invoked, and refused to provide a statement regarding the incident. It should be noted that Connor was extremely uncooperative through the entirety investigation. Connor refused to let me take his photographs in reference to the incident and was not very forthcoming with any details regarding the incident. Connor repeatedly talked about events that had nothing to do with the incident and refused to stay on topic. Prior to being Mirandized, Connor advised that the altercation was only verbal, and he did not push Tatiana.

Based on my investigation, I determined that Connor was the primary aggressor in this incident. I placed Connor under arrest and placed him in the rear of my patrol vehicle. I completed an eCRA for Connor Huntley and charged him with Domestic Violence Battery F.S.S 784.03(1)(A)1.

I provided Tatiana with the Victim's Rights Brochure with an HCSO case number and my name.

I then transported Connor to Orient Road Jail with out any further incident. It should be noted, while en route to Orient Road Jail, Connor wanted to change his statement, and advised that Tatiana scratched him during the altercation. During my investigation, Connor was adamant that the altercation was strictly verbal and the altercation never became physical. At the Orient Road Jail Connor got into an altercation with the

booking nurse and deputies had to place Connor in a separate detention room.

I contacted the Florida Abuse Hotline and advised them regarding the incident. I spoke with operator Samantha (ID# 158) over the phone, who advised they will investigate the incident and will take a report.

My body worn camera was active and recording through entirety of my investigation.

I have no further involvement in this investigation.

MRE Attachments:

Written Statement (1)

Document of Oath (1)



## Narrative Text

    **Type** INTERVIEW-VICTIM
    **Related Person** (Victim #1) HUNTLEY, TATIANA, (DOB: Dec-22-1996)
    **Subject** HUNTLEY, TATIANA DOB: 1996-12-22
    **Author** 258673 - Salman, Syed
    **Related Date** Jan-01-2023 18:07

Tatiana Huntley relayed the following under verbal and written oath:

Connor and she got into a verbal argument regarding their ongoing issues within their relationship. During the argument, Connor pushed her with both hands, and she fell on their daughter's crib. Their daughter was sleeping in the crib during the altercation. She struck her elbow hard on the wood portion of the crib. She did not feel safe because thing have been bad lately. She walked outside of their bedroom and called the Sheriff's Office because she was scared, and she does not feel safe with Connor anymore.



**HILLSBOROUGH COUNTY SHERIFF**

**GENERAL OFFENSE HARDCOPY**

**GO# HS 2023-557 CLEARED BY ARREST**        **BATTERY-2 BATTERY-SIMPLE**

## Narrative Text

        **Type** INTERVIEW-ARRESTEE

   **Related Person** (Arrestee #1) HUNTLEY, CONNOR, T (DOB: Jul-20-1992)

        **Author** 258673 - Salman, Syed

   **Related Date** Jan-01-2023 18:10

Connor Huntley relayed the following:

He and Tatiana had a verbal fight regarding their issues within their relationship. He did not push her and nothing physical occurred. He must go to work, and he needs to wake up in six hours. He did not do anything wrong.

Post Miranda, Connor refused to make a statement regarding the incident.

It should be noted, while enroute to Orient Road Jail, Connor wanted to change his statement, and advised that Tatiana scratched him during the altercation. It should be noted that during my investigation, Connor advised that the altercation was only verbal, and the altercation never became physical.


# Follow Up Report # HS 1 - NOT COMPLETED

### Assignment Information

Assigned to: **261339 - Brown, Carrie**   Rank: **Victim Advocate**
Capacity: **Other Follow Up**   Org unit: **Behavioral Resource Unit**
Assigned on: **Jan-03-2023 (Tue.) 929**  by: **261339 -  Brown, Carrie**
Report due on: **Jan-17-2023 (Tue.)**

### Submission Information

Submitted on: **Jan-03-2023 (Tue.) 1456**
**Follow Up Conclusion**
Follow Up concluded: **No**



**HILLSBOROUGH COUNTY SHERIFF**
**GENERAL OFFENSE HARDCOPY**

| GO# HS 2023-557 CLEARED BY ARREST | BATTERY-2 BATTERY-SIMPLE |
|---|---|

Follow Up Report # HS 1 - NOT COMPLETED

## Narrative Text

     **Type** INTERVIEW-VICTIM
**Related Person** (Victim #1) HUNTLEY, TATIANA, (DOB: Dec-22-1996)
     **Subject** (Victim #1) HUNTLEY, TATIANA, (DOB: Dec-22-1996)
     **Author** 261339 - Brown, Carrie
**Related Date** Jan-03-2023 14:43

On Tuesday January 3, 2023 at approximately 1449, I spoke with Tatiana via phone. Tatiana accepted services which were provided at this time. Resources were emailed to mrshuntley2212@gmail.com. This concludes my involvement in this case at this time.

Case 8:25-cv-01318-MSS-CPT   Document 1-1   Filed 05/27/25   Page 58 of 60 PageID 352


## Clearance Information

Agency: **Hillsborough County**
Cleared status: **Adult Arrest – Not Applicable**
Cleared on: **Jan-01-2023  (Sun.)**
Complainant/Victim notified: **No**


# Related Property Report(s)

### Report Information

**Property Report #: 984957**
Property case status: **DIGITAL EVIDENCE**
Submitted on: **Jan-01-2023  (Sun.)    by: Salman, Syed**
**Related:**
Offense: **GO  HS  2023- 557**
General remarks: **BODY WORN CAMERA VIDEO**
Related items: **1**

Flags = d (disposed) x (x-reference) n (entered on NCIC) *e (evidence)



**HILLSBOROUGH COUNTY SHERIFF**
**GENERAL OFFENSE HARDCOPY**

GO# HS 2023-557 CLEARED BY ARREST                    BATTERY-2 BATTERY-SIMPLE

## Related Arrest Report: AB# 2023-25

Arrestee: **HUNTLEY, CONNOR THOMAS**
Date of birth: **Jul-20-1992**
Related CD#: **602709**

## Arrest Information

Status: **Open**
Reason for arrest: **Probable Cause**
Arrest date: **Jan-01-2023  (Sun.) 428**
Rush file required: **No**
Booked into cell: **Yes**
Arrest agency: **Hillsborough County Sheriff's Office**
Arresting officers: **258673 - Salman, Syed,  - Hillsborough County Sheriff's Office**
Summary of facts: **BATTERY**

Arrest location
Address: **10112 HAWTHORNE PLACE DR    Apartment: 204**
            Municipality: **HILLSBOROUGH COUNTY , FL**
            District: **D5**  Beat: **N03**  Grid: **HS3710**

SODA zone: **No** Drug free zone: **No**

Case ref. #: **HS23000023**

### Additional Arrest Information

Case Screened: **No**
Notify victim on release: **No**
Juvenile: **No**
Diversion recommended: **No**
Interpreter needed: **No**
Rights given: **No**
Mental exam required: **No**
Statement taken: **No**
Fingerprinted: **No** Photo taken: **No**
CD updated: **No**
Family notified: **No**
Lawyer called: **No**
Meal given: **No** Coffee given: **No**
Detained: **No**