UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Connor Huntley
    Plaintiff,
v.

SYED SALMAN, a deputy sheriff of
Hillsborough County Sheriff's Office,
in his individual and official capacity,

AMELIA J. TENNEY-LAMOUREUX,
a deputy sheriff of Hillsborough
County Sheriff's Office, in his
individual and official capacity,

and CHAD CHRONISTER, in his
official capacity as Sheriff of
Hillsborough County,
    Defendants.
_____/

CASE NO.: 8:25-cv-01318-MSS-CPT

## SECOND AMENDED COMPLAINT

Plaintiff, Connor Huntley, for his Complaint against Defendants, alleges as follows:

**Parties, Jurisdiction, and Venue**

1. Plaintiff Connor Huntley is a natural person and at all relevant times resided in Hillsborough County, Florida.

2. Defendant Chad Chronister is the Sheriff of Hillsborough County, Florida, and is sued in his official capacity as the final policymaker for the Hillsborough County Sheriff's Office ("HCSO") with respect to law enforcement practices, training, supervision, and discipline.

3. Defendant Syed Salman is, and at all relevant times was, a deputy sheriff employed by HCSO, acting under color of state law within the

1

scope of his employment. He is sued in his individual and official capacity. Deputy Amelia J. Tenney-Lamoureux, is, and at all relevant times was, a deputy sheriff of Hillsborough County Sheriff's Office, sued in her individual and official capacity.

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Hillsborough County, Florida, within this District.

**Factual Allegations**

6. On January 1, 2023, HCSO deputies responded to two 911 calls involving the same parties.

7. During the first response, the complainant told Deputy Amelia Lamoureux that "nothing got physical," and Lamoureux explained she could not take enforcement action unless something became physical and advised that any restraining order must be handled through the courts.

8. On body-worn camera, Lamoureux stated, "If I have to come back out here, one of you is going to jail. I can't guarantee who," and no arrest was made during the first response.

9. Later that morning, the same complainant placed a second 911 call about a dispute over car keys, reporting that Plaintiff took the keys and put them in his underwear, that she tried to retrieve them by pulling his

2

waistband, and that Plaintiff defensively pushed her reaching hand away toward a crib.

10. When the dispatcher asked, "So he got physical now?" the complainant responded, "No," and when the dispatcher stated, "But he pushed you - that's physical, right?" the complainant did not affirm.

11. During the on-scene investigation after the second call, body-worn camera footage captured the complainant admitting <u>she initiated</u> physical contact by reaching into Plaintiff's waistband to retrieve the keys, that Plaintiff told her to stop touching him, pushed her away, and, when asked if he was trying to get away from her, she said, "Yeah. I think to like, get away."

12. Following this interview, Deputies Lamoureux, Brandon Ghabbour, and Reed Service muted their body-worn cameras and conferred.

13. When the cameras resumed, Deputy Ghabbour stated, "I don't see charging him with touching her at all - what's going on?" and Lamoureux responded, "I told him if I had to come back, he was gonna go to jail."

14. Plaintiff was then placed in the back of Deputy Syed Salman's patrol vehicle.

15. While Plaintiff was already detained, and before Lamoureux relayed earlier events or the complainant's admissions, Lamoureux approached Salman stating she needed to "fill him in on earlier," and Salman replied, "I'm just gonna take him to jail," after which Lamoureux laughed.

3

16. Salman remarked that Plaintiff would "just get out" and referenced Plaintiff "running his mouth," and later stated that in domestic-violence situations, arrests were "out of our hands."

17. During the complainant's sworn statement conducted by Deputy Reed Service, Service asked leading questions—"Did he push you?" and "You didn't want to be pushed?"—to which the complainant answered affirmatively, despite her <u>prior</u> admissions on body-worn camera that she initiated contact and Plaintiff defensibly pushed her away while attempting to disengage.

18. Body-worn camera footage shows Plaintiff was calm, cooperative, and non-aggressive throughout the encounter, stated "I didn't touch her," and told Salman the arrest was unlawful because there was no evidence beyond the complainant's statements; Salman responded, "No, it's not," without identifying additional facts.

19. The arrest affidavit signed by Deputy Salman omitted Deputy Ghabbour's statement questioning probable cause and omitted Deputy Lamoureux's acknowledgment that Plaintiff was attempting to get away.

20. Body-worn camera recordings reflecting the complainant's admissions were not disclosed during the criminal case and were produced only after the case was resolved. Prosecutors' internal case notes later reflected "no visible injury" and documented an effort to obtain additional photographs, and the complainant declined medical services at the scene.

21. The doctrine of qualified immunity does not apply to defendants here, because all defendants at all revenant times described above, violated the clearly established law and the constitutional rights that a reasonable person would have known and should have known.

**Count I – 42 U.S.C. § 1983**

**(Fourth Amendment – Unlawful Seizure/Arrest)**

**Against Both Deputy Syed Salman and Deputy Lamoureux**

**(Individual and Official Capacities)**

22. Plaintiff realleges paragraphs 1–21.

23. At all relevant times, Deputy Salman and Deputy Lamoureux acted under color of state law.

24. Deputy Salman and Deputy Lamoureux both caused Plaintiff's arrest and detention on January 1, 2023 by way of their actions statements, and decision to cause arrest.

25. Before deciding to "just take him to jail," Deputy Salman ignored earlier exculpatory facts, including the complainant's admissions that she initiated contact and that Plaintiff pushed away to disengage.

26. Deputy Salman's arrest affidavit purposely omitted material exculpatory facts, including Deputy Ghabbour's on-scene statement questioning probable cause and Deputy Lamoureux's acknowledgment that Plaintiff was attempting to get away from the complainant.

27. Body-worn camera footage documented that Plaintiff was calm, cooperative, and non-aggressive, and that the complainant admitted initiating contact, stating Plaintiff defensively pushed her hand away to get free.

28. The totality of the facts known to or readily available to Deputy Salman and Deputy Lamoureux at the time did not come close to establishing probable cause that Plaintiff committed a crime, and a reasonable officer would have known that arresting Plaintiff without probable cause violated clearly established his Fourth Amendment rights.

29. As a direct and proximate result of Deputy Salman and Deputy Lamoureux's unlawful arrest, Plaintiff suffered damages, including loss of liberty, emotional distress, reputational harm, and other consequential damages, in amounts to be proven at trial.

**Count II – 42 U.S.C. § 1983**

**(Fourth Amendment – Unlawful Seizure/Arrest)**

**Against Sheriff Chad Chronister (Official Capacity – Monell Liability)**

30. Plaintiff realleges paragraphs 1–21.

31. Sheriff Chronister is the final policymaker for HCSO on training, supervision, discipline, and arrest practices. The flawed and illegal HCSO Policies in existence instructed deputies to make unlawful arrests in situations like that described above, where no probable cause for a crime exists. HCSO policy instructed the deputies to "make an arrest" anytime there was a domestic dispute, despite evidence showing to probable cause.

32. HCSO personnel on scene muted body-worn cameras to confer immediately after the complainant's own admissions of unlawful physical touching and before deciding to arrest Plaintiff.

33. Deputies falsely articulated an approach suggesting arrests in domestic-violence situations were "out of our hands," and a decision to arrest was expressed before material exculpatory facts were relayed.

34. Material exculpatory evidence on body-worn camera was omitted from the arrest affidavit and was not disclosed during the criminal case, surfacing only after case resolution.

35. These facts reflect, and were caused by, an official policy, practice, or custom of HCSO of: (a) arresting in domestic-dispute calls without adequate individualized probable cause; (b) failing to train and supervise deputies regarding probable cause determinations and preservation/disclosure of exculpatory body-worn camera evidence; and/or (c) tolerating or encouraging omissions of exculpatory facts in arrest paperwork.

36. HCSO's policy, practice, or custom, and the failure to train and supervise with deliberate indifference, were moving forces behind the violation of Plaintiff's Fourth Amendment rights.

37. As a direct and proximate result, Plaintiff suffered damages as set forth above.

**Count III – 42 U.S.C. § 1983**

**(Fourth and Fourteenth Amendments – Judicial Deception/Fabrication by Omission)**

**Against Deputy Syed Salman and Deputy Lamoureux**

**(Individual and Official Capacity)**

38.  Plaintiff realleges paragraphs 1–21.

39.  Deputy Salman and Deputy Lamoureux prepared and signed the arrest affidavit while omitting known material exculpatory facts—Deputy Ghabbour's statement questioning probable cause and Lamoureux's acknowledgment that Plaintiff was trying to get away—and without including the complainant's prior admissions on body-worn camera that she initiated the contact.

40.  These omissions were deliberate or made with reckless disregard for the truth and were material to the probable cause determination that led to Plaintiff's seizure.

41.  Absent these omissions, no reasonable officer or magistrate would have found probable cause to arrest or continue to detain Plaintiff.

42.  As a direct and proximate result, Plaintiff suffered damages as set forth above.

**Count IV - (Declaratory Judgement)**

**Against all Defendants**

**(Individual and Official Capacity)**

43.  Plaintiff realleges paragraphs 1–21.

44. An actual, present, and justiciable controversy exists between the parties concerning the constitutionality of all Defendants' conduct.

45. Plaintiff seeks a declaration that Defendants' warrantless, nonconsensual arrest and seizure of Plaintiff, based on the alleged facts above, violated the Fourth Amendment.

46. Plaintiff also seeks a seeks a declaration that qualified immunity does not apply to defendants here, because all defendants at all revenant times described above violated the clearly established statutory and constitutional rights that a reasonable person would have known.

## Conditions Precedent

47. No notice of claim is required for Plaintiff's federal § 1983 claims. To the extent any administrative prerequisites are alleged to apply, they have been satisfied, waived, or are inapplicable.

## Damages

48. Plaintiff seeks compensatory damages for loss of liberty, emotional distress, humiliation, reputational harm, and other consequential losses; punitive damages against all parties in their individual and official capacity; pre- and post-judgment interest; costs; and reasonable attorneys' fees under 42 U.S.C. § 1988.

## Jury Demand

49. Plaintiff demands a trial by jury on all issues so triable.

## Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award:

    a)    Compensatory damages in an amount to be determined at trial;

    b)    Punitive damages against all Defendants in their individual and official capacities;

    c)    Declaratory relief that the conduct described herein violated Plaintiff's constitutional rights;

    d)    Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

    e)    Such other and further relief as the Court deems just and proper.

**Date**: 2.24.2026

                                                  Respectfully submitted,

                                                  */s/ Anthony F. Sabatini*
                                                  ANTHONY F. SABATINI, ESQ.
                                                  FL BAR No. 1018163
                                                  anthony@sabatinilegal.com
                                                  SABATINI LAW FIRM, P.A.
                                                  1601 E. 1st Ave.
                                                  MOUNT DORA, FL 32757
                                                  T: (352)-455-2928
                                                  Attorney for Plaintiff