UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNOR HUNTLEY,

     Plaintiffs,

v.                                                                  Case No: 8:25-cv-1318-MSS-CPT

SHERIFF CHAD CHRONISTER, et
al.,

     Defendants.

_____

## ORDER

This matter is before the Court on Defendants Deputy Syed Salman and Deputy Amelia Tenney-Lamoureux's Motion for Summary Judgment, (Dkt. 51), Plaintiff's Response in Opposition, (Dkt. 60), and Defendants Salman and Tenney-Lamoureux's Reply. (Dkt. 61) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' motion.

## I.  BACKGROUND

Deputy Salman is a certified law enforcement officer and employed as a deputy sheriff by the Hillsborough County Sheriff's Office. (Dkt. 51-1) Deputy Tenney-Lamoureux is employed as a deputy sheriff by the Hillsborough County Sheriff's Office. (Dkt. 47 at ¶ 3) On January 1, 2023, in response to a call for service regarding an allegation of domestic violence, the Deputies arrived at Plaintiff's home that he shared with his wife and young child. In the course of the investigation, Tatiana Huntley, Plaintiff's former wife, provided the deputies with an oral sworn statement

that her husband, Plaintiff Connor Huntley, pushed her against her will, and she provided a written statement to that effect. (Dkts. 47, 51-1) When Deputy Salman interviewed Plaintiff, he denied that the incident occurred. The Officers never asked him to provide a sworn statement of denial. Based upon the totality of the circumstances, Deputy Salman determined that there was probable cause to arrest Connor Huntley for simple battery. Deputy Salman completed an arrest affidavit, which was consistent with the victim's statements. The affidavit included Plaintiff's denials. (Dkt. 51-1) Deputy Tenney-Lamoureux was an assisting officer. She did not sign the arrest affidavit but did concur that probable cause existed to support the arrest of Connor Huntley. Plaintiff was therefore arrested. Ultimately, the charges were dismissed upon Plaintiff's agreeing to participate in a pretrial diversion program.

Now Plaintiff sues the individual deputies and Chad Chronister, Sheriff of the Hillsborough County Sheriff's Office. As relevant for purposes of this motion, Plaintiff's Second Amended Complaint brings three claims against the individual deputies: (1) unlawful seizure/arrest in violation of 42 U.S.C. § 1983; (2) "judicial deception" in violation of 42 U.S.C. § 1983; and (3) a claim for declaratory relief. (Id.) Deputy Salman and Deputy Tenney-Lamoureux now move for summary judgment on Counts I and III of the Second Amended Complaint. [1]

---

[1] An earlier Order dismissed Counts II and IV of the Amended Complaint. (Dkt. 67)

2

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is material if it is a legal element of the claim that may affect the outcome under the substantive governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 248.  In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. Crawford-El v. Britton, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a

3

summary judgment motion." <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing <u>Bald Mtn. Park, Ltd. v. Oliver</u>, 836 F.2d 1560, 1563 (11th Cir. 1989)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing <u>Anderson</u>, 477 U.S. at 252).

### III.    DISCUSSION

Plaintiff sues Deputy Salman and Deputy Tenney-Lamoureux, claiming that the arrest violated his constitutional rights under the Fourth Amendment to the U.S. Constitution. Deputy Salman and Deputy Tenney-Lamoureux move for summary judgment on qualified immunity grounds. Plaintiff asserts generally that factual issues, including, in particular, his denials of the allegations made by his now former wife, would preclude a jury from concluding that Plaintiff committed the acts for which he was arrested or that law enforcement had probable cause to arrest him for the charges. He contends, therefore, that the officers' demands for qualified immunity should be denied. The Court, having considered the Parties' respective arguments and being otherwise fully advised, orders that the motion summary judgment on the basis of qualified immunity is **GRANTED**.

To begin with, the matter of probable cause is determined based on the totality of the circumstances *at the time of an arrest*. <u>Garcia v. Casey</u>, 75 F.4th 1176, 1187–88 (11th Cir. 2023). They are not viewed at a later point in time when an arrested individual might elect to offer a different explanation for the facts surrounding his

4

arrest. For this reason, the Court is compelled to disregard anything in Plaintiff's sworn declaration as to the facts and circumstances of the events he now recounts that were not relayed at the time of the arrest.

Specifically, he now contends that after law enforcement first engaged him and his wife concerning a domestic issue earlier in the evening, they were called again to the home by his wife. During this second interaction he says in his declaration attached to the response to the motion:

10. "I had possession of the keys." In the bodycam video, however, Plaintiff denied he was holding the keys, advising that they were on a countertop or shelf in the home.

11. "Tatiana Huntley followed me and attempted to take the keys from me." Again, Plaintiff said that he did not have the keys.

12. "I moved away from Tatiana Huntley in an effort to disengage from the situation." On video, Plaintiff advised the Officers that there was no confrontation over the keys after the first interaction with law enforcement earlier in the evening. He claimed instead that he had simply gone to lie down to avoid any interaction with the victim.

13. "Tatiana Huntley continued attempting to take the keys from me." Again, Plaintiff told the officers that there was no confrontation over the keys.

14. "As Tatiana Huntley continued to pursue me, I extended my hand outward to maintain distance and prevent further contact." Again,

5

Plaintiff advised law enforcement that there was no confrontation over the keys and that he did not have any physical aggression towards the victim.

15. "During this interaction, Tatiana Huntley made contact with the crib." Here, Plaintiff admits their altercation caused the victim to bump into the crib, yet he told law enforcement officers on the scene that there was no altercation at all.

(Dkt. 57 at 9)

On this motion Plaintiff argues that if the victim's statements were considered against his sworn statements, a jury could find that he did not batter the victim and that there was no probable cause for the arrest. In this regard, Plaintiff is conflating a finding of probable cause with a finding of liability. If this matter were to proceed to trial, it is possible that a jury might find that Plaintiff's current explanation is more credible than his former spouse's statement on the date of the arrest. But the matter to be decided on a demand for qualified immunity is whether there was probable cause or arguable probable cause to arrest the Plaintiff at the time and on the basis of the evidence then available to law enforcement. The Court does not look forward in time to a plausible (or implausible) explanation that the Plaintiff may now be offering.

The facts the officers knew at the time were as follows: Police officers had made contact with the couple earlier in the evening and had admonished them to calm down so that law enforcement would not be called back again. The victim made the following written statement at the end of the second encounter:

6

> [At the conclusion of the first domestic call on the evening of the arrest,] the police officer offered us to be separated for a night. My husband Connor didn't want to leave, he had to work in the morning. And after some argument, I decided to leave and go to my friends (Clarks), but my husband took the key and put them in his underwear. I saw this and tried to take this, but he pushed me to get away from me and I fell on the crib with my left hand and after he tried to pull me so I moved the crib with a baby (fortunately, the baby is fine). And after this I called the police the second time. I recorded proofs of happened situation [sic] on my phone.

(Dkt 51-1 at 6–7)

Plaintiff denied that any sort of altercation or engagement occurred. Specifically, he never told officers that he was attempting to leave to avoid further confrontation when he struggled with the alleged victim to retrieve the keys or that the resulting affray caused the victim to bump into the bassinet. He never told officers that he merely placed his hand out in the direction of the victim to de-escalate the situation. He simply denied that anything occurred. Even after being told what the victim had recounted, Plaintiff continued to offer categorical denials that any sort of negative or physical interaction occurred after the first officers left the home.

Apparently, considering the totality of the circumstances, law enforcement determined that the victim was more credible and decided that probable cause supported the Plaintiff's arrest. Consequently, officers executed an affidavit and secured an arrest warrant, and Plaintiff was arrested pursuant to that warrant.

"Qualified immunity is a defense not only from liability, but also from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). When successfully invoked, qualified immunity shields from civil liability government

7

officials who perform discretionary functions. Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If an official was acting within his discretionary authority, then the burden shifts to the plaintiff to establish that the official is not entitled to immunity. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1136 (11th Cir. 2007).

Once the burden shifts, the plaintiff must show that (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. Id. To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Qualified immunity will shield the defendant official from civil liability if a plaintiff fails either prong of the analysis. Underwood v. City of Bessemer, 11 F.4th 1317, 1328 (11th Cir. 2021) (citing Pearson v. Callahan, 555 U.S. 223, 242 (2009)).

Here, Deputy Salman and Tenney-Lamoureux were acting within their discretionary authority as law enforcement officers. See, e.g., Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) ("Defendant Officers readily satisfied [the discretionary authority requirement], as they undertook all the challenged actions while on duty as police officers conducting arrest and investigative functions."). Thus, Plaintiff has the burden of establishing that Defendants violated his constitutional rights and that such rights were clearly established. Plaintiff has failed to meet the first requirement to show that his constitutional rights were violated. The Court finds that these facts sufficiently supported a finding of probable cause and more than sufficiently established arguable

probable cause. Arrests based on probable cause do not violate the Constitution. See Gates v. Khokhar, 884 F.3d 1290, 1297 (11th Cir. 2018) (stating that "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest"); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."). As such, Plaintiff's arrest was not unconstitutional, and the Officers are entitled to qualified immunity.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants Deputy Syed Salman and Deputy Amelia Tenney-Lamoureux's Motion for Summary Judgment, (Dkt. 51), is **GRANTED.**

2. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendants Syed Salman and Amelia Tenney-Lamoureux.

3. The Clerk is directed to **TERMINATE** any pending motions and deadlines and **CLOSE THE CASE**.

**DONE** and **ORDERED** in Tampa, Florida this 5th day of August 2026.

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE